TIMOTHY A. VAIL,

                Plaintiff,

v.                                       9:19-CV-0034
                                            (GLS/DEP)

JAMES O'GORMAN et. al.,

                Defendants.

APPEARANCES:

TIMOTHY A. VAIL
89-C-1513
Plaintiff, pro se
Attica Correctional Facility
Box 149
Attica, NY 14011

GARY L. SHARPE
Senior United States District Judge

**DECISION AND ORDER**

## I.    INTRODUCTION

Pro se plaintiff Timothy A. Vail commenced this action by filing a complaint on or about August 17, 2018, in the Western District of New York, accompanied by an application to proceed in the action in forma pauperis (IFP). Dkt. No. 1 ("Compl."); Dkt. No. 2. Following his review of those documents pursuant to 28 U.S.C. §§ 1915 and 1915A, District Judge Charles J. Siragusa of the W.D.N.Y. granted plaintiff's IFP application, dismissed plaintiff's causes of action arising out of his incarceration in Attica Correctional Facility (hereinafter "Attica C.F."), and severed and transferred the remaining causes of action to this District. Dkt. No. 4.

The Clerk has forwarded plaintiff's complaint to the Court for review pursuant to 28 U.S.C. §§ 1915 and 1915A.

## II. SUFFICIENCY OF THE COMPLAINT

### A. Governing Legal Standard

Section 1915(e) of Title 28 of the United States Code ("Section 1915") directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that. . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[1] Thus, even if a plaintiff satisfies the financial criteria to commence an action IFP, it is the Court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the Court may permit him to proceed with the action IFP. *See id*.

Likewise, under 28 U.S.C. § 1915A ("Section 1915A"), a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint. . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (holding that Section 1915A applies "to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid the filing fee"); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir.

---

[1] A complaint is frivolous for purposes of Section 1915 when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

2

2007) (finding that both Sections 1915(e)(2)(B) and 1915A provide a basis for screening prisoner's complaints).

In reviewing a pro se litigant's complaint, the Court has a duty to liberally construe the pleadings, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*.

3

(internal quotation marks and alterations omitted).

## B. Summary of the Complaint

Plaintiff's complaint alleges wrongdoing that occurred while he was in the custody of the New York State Department of Corrections and Community Supervision (DOCCS). *See generally* Compl. The following facts are set forth as alleged by plaintiff in his complaint.

Plaintiff escaped from DOCCS custody on July 7, 2003, while he was confined in Elmira Correctional Facility (hereinafter "Elmira C.F."). Compl. at 16. Following his capture and reincarceration, plaintiff was issued a disciplinary sanction of ten years in the Special Housing Unit (SHU). *Id.* On or about May 19, 2010, plaintiff was transferred into Shawangunk Correctional Facility (hereinafter "Shawangunk C.F.") "so that when his disciplinary time in the SHU was completed [in January 2014] he would be moved to the Close Supervision Unit (CSU) in general population at Shawangunk [C.F.]" *Id.* at 17-18. Indeed, plaintiff was approved for CSU on or about May 20, 2010. *Id.* at 65. Nevertheless, during the fall of 2012, defendant Shawangunk C.F. Superintendent Joseph Smith came to plaintiff's SHU cell and told him that it was "more than likely [that] plaintiff would not ever be released back to general population." *Id.* at 19. On or about March 3, 2014, defendants Smith and Shawangunk C.F. Deputy Superintendent of Security Eric Bell arrived at plaintiff's cell to inform him that he was being recommended for Administrative Segregation (hereinafter "Ad. Seg.").[2] *Id.* at 19, 94. Following a hearing on March 7, 2014, plaintiff was officially confined in Ad. Seg. *Id.* at 20.

---

[2] Inmates who are confined in Ad. Seg. are removed from the general population when they "pose a threat to the safety and security of the [prison] facility." 7 N.Y.C.R.R. § 301.4(b); *see Proctor v. LeClaire*, 846 F.3d 597, 601 (2d Cir. 2017).

4

Pursuant to New York State rules and regulations, "[a]n inmate in [Ad. Seg.] status shall have such status reviewed every 60 days[.]"[3] 7 N.Y.C.R.R. § 301.4(d); *see* Compl. at 14. According to plaintiff, his reviews for continued confinement in Ad. Seg. since his initial confinement have been untimely, non-existent, and/or perfunctory. *See generally* Compl. at 20-47. In addition, because plaintiff has not received copies of the decisions continuing his Ad. Seg. confinement in a timely manner, he has been unable to submit statements on his behalf to the review committee in time for consideration by the committee. *Id.*

On July 10, 2015, a reporter from the *New York Daily News* visited plaintiff to interview him about his prison escape in 2003 in light of a different, more recent escape by inmates in DOCCS custody. Compl. at 31. Plaintiff did not know ahead of time that the reporter was going to visit, and plaintiff "did not say anything [during the interview] that would jeopardize the safety or security of the facility." *Id.* Defendant Smith issued plaintiff a memorandum on July 14, 2015, informing him that the visit from the reporter would be taken into consideration during his next Ad. Seg. review. *Id.* at 32.

Plaintiff alleges that his co-conspirator in the escape from Elmira C.F. in 2003 had his prison privileges restored "for quite sometime" prior to January 5, 2013, while plaintiff remained in the SHU and then was confined to, and remains confined in, Ad. Seg. for years afterwards. Compl. at 88.

In the summer of 2017, plaintiff experienced a mental health crisis that eventually led to his confinement in Attica C.F. Compl. at 41-42. Shortly before being transferred, however, defendant Scott Kelly "flatly stated [to plaintiff that DOCCS officials] were not going

---

[3] Plaintiff alleges that, as of April 18, 2017, the reviews must occur every thirty days. Compl. at 14.

5

to be letting plaintiff out of Ad. Seg." *Id.* at 41. Plaintiff currently remains in Ad. Seg. while confined in Attica C.F. *Id.* at 1, 42. The untimely, non-existent, and/or perfunctory Ad. Seg. reviews continue at Attica C.F. *Id.* at 42-44.

Plaintiff's complaint names the following individuals as defendants: (1) Joseph Smith, Shawangunk C.F. Superintendent; (2) Eric Bell, Shawangunk C.F. Deputy Superintendent of Security; (3) Louis Pingotti, Shawangunk C.F. Deputy Superintendent of Security; (4) Amber Tomlin, Supervising Offender Rehabilitation Coordinator and Senior Counselor; (5) Gerald Gardner, Shawangunk C.F. Disciplinary Lieutenant; (6) Joseph Bellnier, DOCCS Deputy Commissioner for Correctional Facilities; (7) James O'Gorman, DOCCS Deputy Commissioner for Correctional Facilities; and (8) Scott Kelly, Director of C.I.U. and Chairperson for Facility Operations.[4] Compl. at 11-14. Each of the defendants is alleged to have some role in the Ad. Seg. review process that plaintiff challenges. *See generally* Compl.

Liberally construed, plaintiff's complaint alleges that the Ad. Seg. review process is a sham and, for that reason, his rights to substantive and procedural due process under the Fourteenth Amendment have been violated.[5] *Id.* at 47-49. In addition, plaintiff asserts a First Amendment retaliation claim based on the Ad. Seg. review committee's consideration of his

---

[4] Attica C.F. Deputy Superintendent of Security R. Bishop is also named as a defendant in the action. Compl. at 12. District Judge Siragusa dismissed all claims asserted against defendant Bishop without prejudice, however, before severing the remaining causes of action asserted in the complaint and transferring them to this district. Dkt. No. 4. Accordingly, the Court will not consider any allegations or claims related to defendant Bishop.

[5] Plaintiff does not challenge the recommendation or initial decision to confine him in Ad. Seg.

6

interview the reporter from the *New York Daily News*.[6] *Id.* at 49-50. Finally, because of the difference in treatment between plaintiff and his co-conspirator in the 2003 escape, plaintiff also asserts a Fourteenth Amendment equal protection claim. *Id.* at 50.

**C.     Analysis**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights[ but] provides . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

### 1. Fourteenth Amendment Procedural Due Process

The Second Circuit recently reiterated and summarized the law governing procedural due process claims where inmates challenge their extended confinement in solitary housing. *H'Shaka v. O'Gorman*, No. 18-628, 2019 WL 588698, at *2 (2d Cir. Feb. 13, 2019). In particular, the Court stated as follows:

> Prisoners in solitary confinement for extended periods must receive 'some sort of periodic review' to verify that they 'remain[ ] a security risk.' *Hewitt v. Helms*, 459 U.S. 460, 477 n.9, 103 S. Ct. 864, 74 L.Ed.2d 675 (1983). In *Proctor*[ *v. LeClaire*, 846 F.3d 597 (2d Cir. 2017),] we enumerated three criteria for that periodic administrative review to satisfy *Hewitt* and the Due Process Clause: The review must (1) meaningfully evaluate, (2) considering recent conduct, (3)

---

[6] Although plaintiff describes this as a "Freedom of Speech" claim in his complaint, the substance of the supporting allegations give rise to a retaliation claim instead. Compl. at 49-50. For instance, plaintiff alleges that defendants violated his First Amendment right to free speech by "punishing [him]. . . for having a visit by a member of the media, and used such visit as a reason for continued Ad. Seg. confinement on numerous reviews." *Id.* Because the Court must construe a pro se litigant's pleadings to raise the strongest arguments possible, *Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir. 2003), plaintiff's First Amendment claim will be analyzed under the law governing retaliation causes of action.

7

> whether valid institutional safety reasons justify continued segregation. *Proctor*, 846 F.3d at 610-11. As to the first requirement, prison officials cannot 'go through the motions of nominally conducting a review meeting when they have developed a pre-review conclusion that the inmate will be confined in Ad Seg no matter what the evidence shows.' *Id.* at 610. Second, the reviewing officials must 'evaluate whether the justification for Ad Seg exists at the time of the review or will exist in the future, and consider new relevant evidence as it becomes available.' *Id.* at 611. But '[t]his is not to say that prison officials are barred from according significant weight to events that occurred in the past. Neither do we suggest that recent events categorically ought to be more salient in periodic reviews than those that occurred long ago.' *Id.* Third, the State 'may not use Ad Seg as a charade in the name of prison security to mask indefinite punishment for past transgressions.' *Id.*

*H'Shaka*, 2019 WL 588698, at *2. In light of these standards, and mindful of the Second Circuit's instruction that a pro se litigant's pleadings must be liberally construed, *see, e.g.*, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), plaintiff's Fourteenth Amendment procedural due process claims asserted against defendants Smith, Bell, Pingotti, Tomlin, Gardner, Bellnier, O'Gorman, and Kelly related to the allegedly untimely, non-existent, and/or perfunctory Ad. Seg. reviews require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 2. Fourteenth Amendment Substantive Due Process

Substantive due process "bars certain arbitrary, wrongful government action[] regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (internal quotation marks omitted). Because the Supreme Court has "been reluctant to expand the concept of substantive due process . . . [,] where a particular Amendment provides an explicit textual source of constitutional protection against

a particular sort of government behavior, that Amendment, and not the more generalized notion of substantive due process, must be the guide for analyzing the[] claims." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (internal quotation marks omitted).

In this case, the allegations in plaintiff's complaint describe wrongdoing that centers around the Ad. Seg. review process. In particular, plaintiff alleges that many reviews that should have occurred never did, and that others were conducted outside the sixty-day time frame set forth in 7 N.Y.C.R.R. § 301.4. Plaintiff also alleges that the review process is meaningless because he was told by defendants Smith and Kelly that he would never be released from solitary confinement in light of his prison escape in 2003. Because the foregoing allegations specifically concern the Ad. Seg. review process and give rise to a procedural due process claim, plaintiff's more generalized substantive due process claim cannot, and does not, survive initial review and is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3. First Amendment Retaliation

Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). To state a plausible First Amendment retaliation claim, a complaint must contain non-conclusory allegations establishing that the speech or conduct at issue was protected, the defendant took adverse action against the plaintiff, and there was a causal connection between the protected speech or conduct and the adverse action. *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)). Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official – even

those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act.'" *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 491).

Mindful of the obligation to liberally construe a pro se litigant's pleadings, the Court concludes that defendants Smith, Pingotti, Tomlin, Gardner, Bellnier, O'Gorman, and Kelly must respond to plaintiff's retaliation claim, which stems from allegations that plaintiff was punished by those individuals for visiting with the reporter from the *New York Daily News* in July 2015 by continuing his confinement in Ad. Seg.

With respect to plaintiff's retaliation claim asserted against defendant Bell, however, the complaint alleges that defendant Bell was no longer stationed at Shawangunk C.F. by the time plaintiff met with the *New York Daily News* reporter in July 2015. Compl. at 22, 31. Although the complaint alleges that plaintiff was informed on July 15, 2015 that defendant Bell was transferred to a different facility, it appears much more likely, based on the context in which that allegation appears in the complaint, that defendant Bell was transferred in 2014. Indeed, plaintiff alleges that defendant Pingotti became the Shawangunk C.F. Deputy Superintendent of Security (replacing defendant Bell) in 2014. *Id.* at 12. Moreover, plaintiff's complaint is drafted more or less in chronological order, and the portion of the complaint describing defendant Bell's transfer explains the events that occurred in 2014, not 2015. *Id.* at 22. Accordingly, assuming the allegations in the complaint are true and plaintiff met with the *New York Daily News* reporter in 2015, defendant Bell was no longer employed at Shawangunk C.F. and could not have participated in the Ad. Seg. reviews following plaintiff's meeting with the reporter. Because personal involvement is a prerequisite to any Section

10

1983 claim seeking money damages, *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994), and the complaint fails to allege defendant Bell's personal involvement in any retaliation against plaintiff, the retaliation cause of action seeking money damages is dismissed as against defendant Bell for failure to state a claim on which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

While personal involvement is not required in an action seeking prospective injunctive relief, *see Bodie v. Morgenthau*, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004), an injunction may be issued only if the official has the authority to perform the required act. *See Loren v. Levy*, No. 00-CV-7687, 2003 WL 1702004, at *11 (S.D.N.Y. Mar. 31, 2003). In this case, it is not clear based on the complaint where defendant Bell is now stationed, what title he holds within DOCCS, or whether he is even still employed by DOCCS. Accordingly, there is no basis to conclude that defendant Bell has the authority to carry out any injunction the Court may issue in this action. For that reason, plaintiff's retaliation claim asserted against defendant Bell seeking injunctive relief is dismissed for failure to state a claim on which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

#### 4. Fourteenth Amendment Equal Protection

The Equal Protection Clause under the Fourteenth Amendment requires the government to treat all similarly situated persons alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). It "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a

11

person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980) (emphasis omitted)). To state a viable claim for denial of equal protection, a complaint must allege "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citation omitted). Alternatively, under a "class of one" theory, a complaint must allege that the plaintiff has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 291-92 (2d Cir. 2013).

Plaintiff's complaint is devoid of any allegation that defendants intentionally discriminated against a suspect class of people. Accordingly, the Court has construed the complaint as asserting an equal protection claim based on a class-of-one theory of liability. To state a cognizable class-of-one equal protection claim, a complaint must allege facts plausibly alleging that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate governmental policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006); *accord, Fahs Constr. Grp., Inc.*, 725 F.3d at 292. With respect to the first prong, a plaintiff must allege "an extremely high degree of similarity between [himself] and the persons to whom [he] compare[s] [himself]." *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

The complaint in this case does not state a plausible class-of-one equal protection

12

claim. Although plaintiff alleges that his co-conspirator in the 2003 prison escape had some of his privileges restored some time before January 2013, that is the only allegation in the complaint supporting plaintiff's claim. The two escapees (plaintiff and his co-conspirator) may be similar in the sense that they participated together in the same prison escape, the complaint is entirely devoid of any other allegations that render the two individuals similar. For instance, it is not clear the crimes for which the co-conpsirator is incarcerated, who was the mastermind behind the escape, whether the co-conspirator's disciplinary history justified earlier restoration of privileges, or if the co-conspirator has any other conditions (health or mental health) that may have been considered when restoring his privileges. Even assuming that plaintiff and his co-conspirator are sufficiently similar, however, the complaint also fails to allege what privileges were restored to the co-conspirator. A vague allegation that defendants imposed "disproportionate punishment" on plaintiff and his co-conspirator does not plausibly allege that the two individuals were treated so differently to support a class-of-one equal protection claim. For these reasons, plaintiff's equal protection claim is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### III. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's complaint (Dkt. No. 1) is **ACCEPTED for filing**; and it is further

**ORDERED** that the following claims asserted in the complaint require a response: (1) Fourteenth Amendment procedural due process asserted against all defendants; and (2)

13

First Amendment retaliation asserted against defendants Smith, Pingotti, Tomlin, Gardner, Bellnier, O'Gorman, and Kelly; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice**[7]: (1) Fourteenth Amendment substantive due process asserted against all defendants; (2) First Amendment retaliation asserted against defendant Bell; and (3) Fourteenth Amendment equal protection asserted against all defendants; and it is further

**ORDERED** that the Clerk shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon defendants Smith, Bell, Pingotti, Tomlin, Gardner, Bellnier, O'Gorman, and Kelly. The Clerk shall forward a copy of the summonses and complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that a response to the complaint shall be filed by defendants Smith, Bell, Pingotti, Tomlin, Gardner, Bellnier, O'Gorman, and Kelly or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions, and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must

---

[7] Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file an amended complaint that cures the deficiencies identified in this Decision and Order. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant that plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff's deadline to amend his pleading as a matter of course is set forth in Rule 15(a) of the Federal Rules of Civil Procedure.

14

comply with rule 7.1 of the Local Rules of Practice for the Northern District of New York in filing motions. Motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action**; and it is further

    **ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

March 8, 2019
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge